UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DAVID TRAMMELL,

                 Plaintiff,

       -against-

THE CITY OF NEW YORK, a municipal corporation,
KYLE P. STANLEY, Shield No. 3809, JAY RIVERA,
Shield 3882, TERRENCE CREIGHTON, Tax ID No. 921241,
TREBOR EVANS, Shield No. 00343, JUSTIN PUCCIA,
Shield No. 15693, "JOHN" ROBERTSON, who's first name
is currently unknown, and JOHN AND JANE DOES
Individually and as Police and Supervisory Officers of the
New York City Police Department, the identity and number
of which is presently unknown,

                          Defendants.
-------------------------------------------------------------------X

**COMPLAINT**

CV 13-cv-____ 0371

**JURY TRIAL
DEMANDED**

ROSS, J.

MANN. M.J.

      Plaintiff, David Trammell, by his attorney, the Law Office of Glenn A. Wolther, as and

for her complaint alleges as follows, upon information and belief:

### Jurisdiction & Venue

1.      Jurisdiction is based on 28 U.S.C. §§1331 and 1343.

2.      Venue is properly lodged in this Judicial District pursuant to 28 U.S.C. §1391(b)(1), this

being the District in which the majority of events and omissions giving rise to the claims

occurred.

## Parties

3.      At all times hereinafter mentioned Plaintiff, David Trammell ("Plaintiff" or "Trammell")

was an adult African American male.


4.      At all relevant times hereinafter mentioned, Defendant The City of New York ("NYC"),

was and is a municipal corporation, duly organized and existing under and by virtue of

the laws of the State of New York.  NYC acts by and through its agencies, employees,

and agents including but not limited to the New York City Police Department ("NYPD")

and its employees. The NYPD is a non-suable subdivision of NYC and its employees are

employees of NYC.


5.      At all relevant times hereinafter mentioned, Defendant Kyle P. Stanley, Shield No. 3809,

("Stanley") was assigned to the 75th Precinct of the NYPD and is a police officer employed,

trained, retained, and supervised, by NYC and the NYPD at the 75th Precinct.  Plaintiff

brings this action against Stanley in his personal and official capacities.


6.      At all relevant times hereinafter mentioned, Defendant, Jay Rivera, Shield 3882,

("Rivera") was assigned to the 75th Precinct of the NYPD and was a police officer

employed, trained, retained, and supervised, by NYC and the NYPD at the 75th Precinct.

Plaintiff brings this action against Rivera in his personal and official capacities.


7.      At all relevant times hereinafter mentioned, Defendant, Terrence Creighton, Tax ID No.

921241, ("Creighton") was assigned to the 75th Precinct of the NYPD and was a police

Sergeant (and then a Lieutenant) employed, trained, retained, and supervised, by NYC and

the NYPD at the 75th Precinct. Plaintiff brings this action against Creighton in his personal, supervisory, and official capacities.

8. At all relevant times hereinafter mentioned, Defendant, Trebor Evans, Shield No. 00343, ("Evans") was assigned to the 75th Precinct of the NYPD and was a police Detective employed, trained, retained, and supervised, by NYC and the NYPD at the 75th Precinct. Plaintiff brings this action against Evans in his personal, supervisory, and official capacities.

9. At all relevant times hereinafter mentioned, Defendant, Justin Puccia, Shield No. 15693, ("Puccia,") was assigned to the 75th Precinct of the NYPD and was a police officer employed, trained, retained, and supervised, by NYC and the NYPD at the 75th Precinct. Plaintiff brings this action against Puccia in his personal and official capacities.

10. At all relevant times hereinafter mentioned, Defendant, "John" Robertson, ("Robertson,") was assigned to the 75th Precinct of the NYPD and was a police officer employed, trained, retained, and supervised, by NYC and the NYPD at the 75th Precinct. Robertson was Puccia's partner at the time of the incident. Plaintiff brings this action against Robertson in his personal and official capacities.

11. Upon information and belief, at all relevant times hereinafter, John and Jane Does are or were members of the NYPD and are/were employed, retained, trained, and supervised by NYC and the NYPD as police and supervisory officers. Plaintiff brings this action against John and Jane Does in their individual, official, and supervisory capacities.

12.     Defendants Stanley, Rivera,  Creighton, Evans, Puccia, Robertson, and the John and Jane Does, are hereinafter collectively referred to as the "NYPD Defendants" At all times hereinafter, the NYPD Defendants were acting under color of law and pursuant to their authority as police officers and supervisory officers and employees of NYC and the NYPD.  All of the NYPD Defendants actions described herein are within the scope of their employment.  The NYPD Defendants are all State Actors.

13.     Under the Charter of the City of New York, NYC is responsible for the conduct of municipal agencies such as NYPD, and as such is the legal entity responsible for implementing any legal or equitable relief that may be ordered by the Court in this action.

## Facts

14.     On the evening of January 21, 2010 at approximately 7:50 PM Plaintiff was walking in the vicinity of Jackie Robinson Parkway, Highland Boulevard  / Vermont Street when he was approached by Defendants Stanley, Rivera, and Creighton.

15.     Defendants Stanley, Rivera,  and Creighton, began to question and issue orders to Mr. Trammell.

16.     Plaintiff was seized, questioned, and placed against a wall with his hands in the air and then searched.

17.    Plaintiff did not feel and in fact was not was not free to leave custody of Stanley, Rivera, and Creighton as he was not free to disregard the defendant officers' questions, walk away or leave the location.

18.    Plaintiff's person and clothing were searched--all without his consent.

19.    At the time of the search of Mr. Trammell's person and clothing there was not any reasonable basis for Stanley, Rivera, or Creighton to believe that Plaintiff had committed a crime or violation. And Stanley, Rivera, and Creighton lacked sufficient legal cause to stop, detain, search, seize, or arrest Plaintiff, nor was there any reasonable basis for them to believe such cause existed.

20.    Given the facts and circumstances no reasonable police officer would have searched Plaintiff's persons and clothing.

21.    Stanley, Rivera, and Creighton falsely asserted that they had observed Mr. Trammell holding marijuana in his hand that was open to public view. This was untrue as Plaintiff was not holding any marijuana in his hand(s).

22.    Following the illegal stop and search, a small amount of marijuana was recovered from inside of Plaintiffs sock, underneath the area covered by his sneaker-- and notably-- not in Plaintiff hand(s) open to public view as was falsely charged by the NYPD Defendants.

23.    Shortly after a brief verbal exchange with the NYPD's Defendants present, Stanley,

Rivera, and Creighton shoved, struck, choked, twisted, kicked and beat Plaintiff.

25.    At some point Defendants Puccia and Robertson arrived with a NYPD vehicle.

26.    When the NYPD Defendants who were present placed Plaintiff --who was handcuffed-- into a NYPD vehicle they rammed his head into that vehicle.

27.    Following his unlawful seizure, arrest, and beating Plaintiff was removed transported, via the police vehicle, to the 75th. Police Precinct. Plaintiff was later transported to Queens County Criminal Court.

28.    Following Plaintiff's release he was initially treated for his injuries at the emergency room of Woodhull Hospital.

29.    Upon information and belief, in order to cover up their illegal actions, the NYPD Defendant, initiated and falsely and maliciously told the DAKC that the plaintiff had committed various crimes, including holding marijuana in his hand(s) open to public view. Defendants knowingly created and fabricated false information--including--official paperwork, documents, and information that was materially false, knowing that: (a) the Kings County District Attorneys ("DAKC") Office would rely on the false information and (b) that the false information was likely to influence a jury's decision. The NYPD Defendants then forwarded and distributed the false information to DAKC's office.

30.    Upon information and belief, in order to make their actions, with respect to the initial illegal seizure of Plaintiff, appear legitimate, the NYPD Defendants conspired, aided and

abated, and acted in a joint venture, with one another one another, and agreed to fabricated

false NYPD official paper work, documents, and information and then transmitted and

communicated the false and fabricated official paperwork, documents, and information-

including the claim the Plaintiff possessed marihuana in his hand(s) open to public view -

to the DAKC in an attempt to make it appear that there was a constitutionally permissible

bases for the NYPD Defendants' actions, including the subsequent discovery of

marihuana in Plaintiff sock when in fact there was not.

31.     At the time(s) that the NYPD Defendants transmitted and communicated the false and

fabricated official paperwork, documents, and information to the DAKC's office it was

reasonably foreseeable to the NYPD Defendants that the DAKC's office rely upon the

transitions and communications that would lead to Plaintiff's being charged with various

crimes. Indeed the NYPD knew or should have known, that unless their initial seizure of

Plaintiff was made to appear legitimate that there could be no prosecution against

Plaintiff.

32.     And this is precisely what happened. From the time the first official paperwork and

documents, were created, continuing through all the pre-trial proceedings in the criminal

case, upon information and belief, the NYPD Defendants deliberately and intentionally

deceived the DAKC's office regarding the factual information relating to Plaintiff.

33.     Upon information and belief, Plaintiff was unjustly and unlawfully subjected to abusive

criminal process in order to justify the NYPD Defendants' improper initial stop, search, and

seizure. The NYPD Defendants falsely claimed that the marijuana, was observed in

Plaintiff's hand(s), open to public view, when in fact it was discovered as the result of an unlawful search in a place other than where the NYPD Defendants falsely asserted it was.

34. Upon information and belief, the NYPD Defendants made these false allegations, despite the fact they were untrue, to cover up their misconduct, retaliate against the Plaintiff, to meet to meet productivity goals and quotas and because of his race.

35. Upon information and belief, as part of the NYPD Defendants conspiracy and joint venture they agreed to fabricate false charges and false official paperwork and documents and aid and abet one another in doing so. This included an allegation that Plaintiff had the marijuana in open and public view.

36. The criminal prosecution against Trammell was commenced with a sworn accusatory instrument / Complaint, docket number 2010K005922, signed by Defendant Evans, in which Evans swore that he was in turn "by a sworn statement of Police Officer Kyle P. Stanley" to have observed Trammell, *inter alia*, in possession of "marijuana which was open to public view and which [Stanley] recovered from [Trammell's] hand." (Bracketing added), Additionally, the NYPD Defendants created false official paper work and documents, regarding the particulars of the search of the Plaintiff.

37. Plaintiff was arraigned on the charges contained within the sworn accusatory instrument / Complaint at the Kings County Criminal Court.

38. Based upon sworn complaint, Plaintiff was arraigned and charged, with, violating various provisions New York Penal Law: Article 221 including the false top charge of Penal Law §221.10, Criminal Possession of Marijuana.

39.   The allegations in the Criminal Complaint and other official paper work and documents utilized in the arrest and prosecution, regarding Penal Law §221.10 -marijuana being open and in public view- were materially false, and the NYPD Defendants knew them to be false at the time they were made.

40.   Upon information and belief, the other NYPD Defendants also knew, or should have known, that the Criminal Complaint and other official paper work and documents utilized in the arrest and prosecution were materially false at the time that Evans and Stanley made them.

41.   At Plaintiff's arraignment he was released. However, Plaintiff was imprisoned and remained continually confined from the time of his initial seizure, until he was released following his arraignment in Kings Criminal Court.

42.   Furthermore, Plaintiff's liberty remained restrained after his release as he was ordered, under sanction of arrest and bail forfeiture, to reappear at his subsequent court dates.

43.   Plaintiff's diminished liberty continued, until following a suppression hearing in February of 2011 the case against him was subsequently favorably terminated and dismissed on or about April of 2011.

44.   At no time did the NYPD Defendants have sufficient cause to commence criminal process against Plaintiff on the charge  §221.10 Possession of Marijuana open to public view or cause such process to be commenced, nor was there any basis for the NYPD Defendants to reasonably believe that such cause existed.

45.   Upon information and belief, the NYPD Defendants actions were willful, intentional, and malicious.

46.   Upon information and belief, the NYPD Defendants actions were taken, in part or whole, to deprive Plaintiff of his Constitutional rights and cover up for the illegal stop, search, and seizure of Plaintiff.

47.   Upon information and belief, no police officer or other NYPD Defendant intervened or stopped the other NYPD Defendants from seizing, arresting, beating, and /or charging Plaintiff or continuing the criminal prosecution against the Plaintiff.

49.   Upon information and belief, no supervisory NYPD member or supervisory NYPD Defendant prevented or remedied the unlawful arrest and criminal prosecution.

50.   Upon information and belief, supervisory NYPD members, supervising officers ratified the arrest, tacitly or explicitly.

## FIRST CAUSE OF ACTION
## FEDERAL CLAIMS
## AGAINST ALL INDIVIDUAL DEFENDANTS

51.   Plaintiff repeats and realizes each and every allegation contained in paragraphs 1 through 50 as if set forth fully herein.

52.   Upon information and belief, the NYPD Defendants violated, conspired to violate, and aided and abetted, and acted in a joint venture, with one another one another in the

violation of Plaintiff's clearly established and well-settled federally protected rights.

53.    The acts and conduct described herein deprived the Plaintiff of his rights under
the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States
Constitution, and 42 U.S.C. §§1981, 2000(d), and 3789d(c), in violation of and 42 U.S.C.
§§1981, 1983, 2000(d), and 3789d(c):

(a)    To be free from the Unreasonable use of Force by police officers acting under
color of law;

(b)    To be free of Unreasonable Search and Seizure of his person and effects, by
police officers acting under color of law;

(c)    To be free from unlawful Warrantless Arrest by police officers acting under
color of law;

(d)    To be free from False Imprisonment by police officers acting under color of law;

(e)    Not to be deprived of his Right to a Fair Trial by police officers acting under
color of law;

(f)    Not to be deprived of Liberty by having police officers Fabricate and /or Falsify
Official Paperwork, Evidence , and/or Information against him; and transmitting that
false evidence to the District Attorney/ Prosecutor's office/ while acting under color
of law;

(g)    Not to be deprived of Liberty without Procedural and / or Substantive Due
Process of Law by police officers acting under color of law;

(h)     To be free from Malicious Prosecution by police officers acting under color of law;

(i)     Not to be Deprived of Equal Protection under the law, and not to be Deprived of any Right or Privileges of a Citizen, by police officers acting under color of law;

(j)     To be free from discrimination based upon race; and

(k)     Not to be deprived of his Constitutionally protected rights when by police officers acting under color of law know of and or observe such misconduct but Fail to Intervene and Prevent such misconduct.

54.     The acts and conduct of the NYPD Defendants described above was intentional, wanton, malicious and oppressive.

55.     As a direct and proximate result of the NYPD Defendants' acts described herein, the NYPD Defendants have caused Plaintiff to suffer deprivation of his liberty, mental and emotional distress, suffering, humiliation, embarrassment, economic, and other damages.

## SECOND CAUSE OF ACTION
## FEDERAL CLAIMS
## AGAINST SUPERVISORY DEFENDANTS

56.     Plaintiff repeat and realize each and every allegation contained in paragraphs 1 through 55 as if repeated fully herein.

57.     Upon information and belief, defendants Creighton, John and Jane Does failed to

supervise, monitor, train and discipline NYPD Defendants and the other non supervisory NYPD Defendants.

58. Upon information and belief, defendants Creighton and John and Jane Does and other NYPD Defendants have shirked their duty to ensure that officers under their control, and accountable to them, do not engage in civil rights violations and unlawful conduct.

59. Upon information and belief, the acts and conduct of the Creighton and the supervisory John and Jane Does described above was intentional, wanton, malicious and oppressive.

60. As a direct and proximate result of Creighton and the supervisory John and Jane Doe Defendants' acts described above, they have caused Plaintiff to suffer deprivation of his liberty, mental and emotional distress, humiliation, embarrassment, economic and other damages.

### THIRD CAUSE OF ACTION
### FOURTH, FIFTH, SIXTH and FOURTEENTH AMENDMENT
### *MONELL* CLAIM AGAINST NYC

61. Plaintiff repeats and realleges, each and every allegation contained in paragraphs 1 through 60 as if fully set forth fully herein.

62. At all times herein mentioned the NYC, its agents, employees and servants, including but not limited to the NYPD Defendants, acted under color of the statutes, customs, ordinances and usage of the NYC and State of New York.

63.     Upon information and belief, the acts and conduct complained of herein resulted in part

from a *de facto* policy or custom, or practice of the Defendant NYC, implemented by

police officers of the NYC and/or condoned by the NYPD to: (a) to improperly stop,

seize, and search individuals; and then (b) attempt to cover up the illegal nature of the

searches and seizures by fabricating false official paperwork, documents, information,

and evidence knowing that the official paperwork, documents, information, and evidence

would be relied upon the DAKC and other District Attorney's Offices within NYC and

charge, deprive them of their Liberty; (c) maliciously prosecute, civilians without legally

sufficient justification; (d) wrongfully stop, search, and seize individuals based on racial

pretexts and profiling; (e) using excessive force on individuals; and (f) arresting innocent

persons in order to meet productivity goals.


64.     Upon information and belief, the acts and conduct complained of herein resulted in part

from a *de facto* policy or custom, or practice of the Defendant NYC, implemented by

police officers of the NYC and/or condoned by the NYPD: To stop, seize, search, and

falsely arrest and imprison individuals on less than probable cause; To forward, transmit,

and communicate false information- containing false and/or fabricated official paper

work, documents, testimony, information,  and /or evidence knowing that false

information would be relied upon the DAKC and other District Attorney's Offices within

NYC to charge, and maliciously prosecute, civilians without legally sufficient

justification; To fabricating false official police paper work, documents, testimony,

information,  and /or evidence to protect themselves and other members of the NYPD; To

14

search and seize persons to reach productivity goals/ arrest quotas, in which the NYC has

acquiesce in and ratify widespread unlawful practices by NYPD members including

within the 75th and other NYPD Precincts.  NYC has an ongoing and arbitrary refusal

to discipline its officers and to adequately investigate allegations of abuse, neglect,

cruelty, and violation of NYPD departmental rules and regulations has demonstrated a

pattern and practice of deprivation of civil rights and abuse of state power by

subjecting persons to unlawful and unjustified detentions and deprivations of their

rights and generally creating and fostering an environment in which an attitude of "cover-

up" and denial of officer misbehavior, tortious acts, and violations of law are condoned

and accepted, all of which is common knowledge to the subject community and residents

within the New York City area.


65.     Further, upon information and belief, the acts and conduct complained of herein resulted

in part from a *de facto* policy or custom, or practice of the Defendant NYC, implemented

by police officers of the NYC and/or condoned by the NYPD, of failing to properly

supervise, train, instruct, and discipline police officers with regard to: the preparation of

truthful accusatory instruments/ criminal complaints/supporting depositions; adequate

evidence of crimes and to discipline those who unjustifiably charge and prosecute or

continue to prosecute persons accused of crimes in the absence of probable cause; the

proper methods of conducting interviews of witnesses and/or accused persons, and to

discipline police officers who use "testilying" and/or fabricating false evidence to bring

about the police officers' preconceived perceptions or determinations of guilt, including,

but not limited to, such perceptions and/or determinations influenced by racial prejudice

and/or ethnic bias and; to allow police officers to work without proper levels of supervision and not properly investigate complaints of similar misconduct or discipline NYPD members regarding such complaints and other information it has been made aware of. NYC was responsible for ensuring that reasonable levels of supervision were in place within the NYPD generally and the 75th Precinct specifically.

66.   Incidents of NYC's *de facto* policy or custom, or practice and/or deliberate indifference regarding arrest quotas and police perjury are set forth in *Schoolcraft v. City of New York*, 10 Cv 6005 (RWS)(S.D.N.Y.)(In a civil rights lawsuit, a former officer of the N.Y.P.D. described the N.Y.P.D.'s *de facto* policy and practice regarding illegal quotas for, *inter alia*, arrests, which including arrest absent probable cause, as well describing wide spread falsification of evidence and police perjury.); *Colon v. City of New York*, 09 Cv. 8, 09 Cv 9 (JBW)(2009 WL 4263362 at *2 (E.D.N.Y.  Nov. 25, 2009.)(repeated, widespread falsification by NYPD members); *See also*, *Matthews v. City of New York*, 12 cv 1354(BSJ) (S.D.N.Y. Apl. 12, 2012)(regarding illegal NYPD. quotas.). Despite the prior notice of inadequate supervision, NYC took inadequate steps to ensure that reasonable levels of supervision were in place within the 75th Precinct in order to reasonably provide that NYPD officers engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers to stop, detain, search, seize, and maliciously prosecute members of the public, including and specifically, the Plaintiff in this action.

67.   Illegal arrest and subsequent fabrication of information --such as charges, official

paperwork, documents, and statements,  to cover up that illegal is consistent with the

culture of Constitutional abuse, of citizens, that has long existed within the NYPD.

NYC's pattern and practice, a *de facto* policy or custom, or practice, and deliberate

indifference to police corruption have long been documented. In fact in 1994 the Mollen

Commission concluded that police perjury and falsification of official records was a

ongoing and serious problem, finding that:

> Police perjury and falsification of official records is a serious problem facing
> Department and the criminal justice system- largely because it is so often a
> "tangled web" that officers weave to cover for other underlying acts of corruption
> or wrongdoing.  (*The City of New York's Commission to Investigate Allegations of
> Corruption and the Anti-Corruption Procedures of the Police Department,
> Commission Report*, Chair, Milton Mollen (July 7, 1994) ("Mollen Report").

68.    The Mollen Report found "falsification" in:

> [D]documentary perjury, as when an officer swears falsely under oath in an
> affidavit or criminal complaint; and the falsification of police records, as when an
> officer falsifies the facts and circumstances of an arrest in the police reports.
> (Mollen Report at 36.)

69.    Further the Mollen Report found that:

> [O]nce officers falsify the basis of the arrest, search, or other action in a
> Department record-such as an arrest report, complaint report, search warrant
> application, or evidence voucher- to avoid Departmental or criminal charges, they
> must stick to their story even under oath when swearing to a criminal complaint . .
> ." (*Id.* 36-37.)

70.    Further the Mollen Report found that:

> Falsification to conceal corruption was a common practice among many of the
> corrupt officers cooperating with this Commission. . . To explain how and why
> they were present in a particular premises or came to arrest a particular person,
> officers manufactured facts. . . .
>
> In a typical case . . . To conceal their crime, the officers falsified their arrest
> reports and then stuck to their fabricated story when the District Attorney's Office

reviewed the case for prosecution." (*Id.* 37.)

71. Despite the recommendations of the Mollen Report, as well as many other studies, for example, the findings in 2000 of the United States Commission on Civil Rights, published in, *Police Practices and Civil Rights in New York City* (2000),  NYC and the NYPD have allowed the pattern of misconduct to continue.

72. This ongoing pattern of misconduct within the NYPD has been evidence recently in the indictment and subsequent convictions of former NYPD members, Sergeant William Eiseman and police officer Michael Carsey.

73. Eiseman at times supervised Carsey where illegal searches led to the recovery of contraband, Eiseman ordered his subordinates to falsify their police paperwork in order to make the stops and searches appear legitimate. (*See* June 27, 2011 and March 8, 2012 *Press Releases of New York County District Attorney's Office.*)

74. According to his guilty plea, Eiseman was involved in at least three incidents of misconduct documented between August 2007 and the summer of 2008. Each involved unlawful stops and detentions of civilians, which sometimes led to unlawful searches as well.  And where the searches led to the recovery of contraband, Eiseman ordered his subordinates to falsify their police paperwork in order to make the stops and searches appear legitimate. In 2011 Eiseman plead guilty, to the top charge in his indictment, Perjury in the First Degree, as well as three counts of Official Misconduct, for lying under oath, conducting unlawful searches and seizures, and directing subordinates to falsify

paperwork in order to make the arrests appears to be legitimate. In 2012, Carsey was

found guilty after a jury trial on two counts of Perjury in the First Degree and one count of

Offering a False Instrument for Filing in the First Degree. (*Press Releases of New York*

*County District Attorney's Office*.)

75.    The Honorable Jack B. Weinstein has pointed to this widespread falsification arresting

police officers within the NYPD and stated:

> Informal inquiry by the court and among the judges of this court, as well as
> knowledge of cases in other federal and state courts, has revealed anecdotal
> evidence of repeated, widespread falsification by arresting police officers of the
> New York City Police Department. Despite numerous inquiries by commissions
> and strong reported efforts by the present administration—through selection of
> candidates for the police force stressing academic and other qualifications, serious
> training to avoid constitutional violations, and strong disciplinary action within
> the department—there is some evidence of an attitude among officers that is
> sufficiently widespread to constitute a custom or policy by the city approving
> illegal conduct of the kind now charged." *Colon v. City of New York* et al.,  09 cv.
> 8, 09 cv. 9 (JBW), 2009 WL 4263362 at *2 (E.D.N.Y.  Nov. 25, 2009.)

76.    Incidents of NYC's *de facto* policy or custom, or practice and/or deliberate indifference

regarding racial discrimination and profiling are set forth in *Floyd, et al. v. City of New*

*York, et al,* 08-cv-01034(SAS)(HBP) (SDNY August 31, 2012). According to data

compiled by the New York Civil Liberties Union (NYCLU") in *Floyd*  demonstrates

unconstitutional customs and polices of profiling minorities and racial bias in the NYPD's

stop and frisks of African Americans. In 2008 NYC/NYPD was ordered to produce all

of its "stop-and-frisk," or UF-250, data from 1998 through the first half of 2008.

*Floyd, et al. v. City of New York, et al,* 08-cv-01034(SAS)(HBP). The NYCLU's

analysis revealed that more than 2 million innocent New Yorkers were subjected to police

stops and street interrogations from 2004 through 2010, and that black and Latino communities continue to be the overwhelming target of these tactics. Nearly nine out of 10 stopped-and-frisked New Yorkers have been completely innocent. According to the NYPD's own reports produced in *Floyd*:

In 2003, New Yorkers were stopped by the police 160,851 times.

    140,442 were totally innocent (87 percent).

    77,704 were black (54 percent).

    44,581 were Latino (31 percent).

    17,623 were white (12 percent).

    83,499 were aged 14-24 (55 percent).

In 2004, New Yorkers were stopped by the police 313,523 times.

    278,933 were totally innocent (89 percent).

    155,033 were black (55 percent).

    89,937 were Latino (32 percent).

    28,913 were white (10 percent).

    152,196 were aged 14-24 (52 percent).

In 2005, New Yorkers were stopped by the police 398,191 times.

    352,348 were totally innocent (89 percent).

    196,570 were black (54 percent).

    115,088 were Latino (32 percent).

40,713 were white (11 percent).

189,854 were aged 14-24 (51 percent).

In 2006, New Yorkers were stopped by the police 506,491 times.

457,163 were totally innocent (90 percent).

267,468 were black (53 percent).

147,862 were Latino (29 percent).

53,500 were white (11 percent).

247,691 were aged 14-24 (50 percent).

In 2007, New Yorkers were stopped by the police 472,096 times.

410,936 were totally innocent (87 percent).

243,766 were black (54 percent).

141,868 were Latino (31 percent).

52,887 were white (12 percent).

223,783 were aged 14-24 (48 percent).

In 2008, New Yorkers were stopped by the police 540,302 times.

474,387 were totally innocent (88 percent).

275,588 were black (53 percent).

168,475 were Latino (32 percent).

57,650 were white (11 percent).

263,408 were aged 14-24 (49 percent).

In 2009, New Yorkers were stopped by the police 581,168 times.

510,742 were totally innocent (88 percent).

310,611 were black (55 percent).

180,055 were Latino (32 percent).

53,601 were white (10 percent).

289,602 were aged 14-24 (50 percent).

77. Furthermore, an April 2008 NYCLU Report: Marijuana Arrest Crusade: Racial Bias and Police Policy in New York City, 1997- 2007, also shows NYC/NYPD's unconstitutional customs and polices against minorities. It states:

> From 1997 to 2006, the New York City Police Department arrested and jailed more than 353,000 people simply for possessing small amounts of marijuana. This was eleven times more marijuana arrests than in the previous decade, and ten times more than in the decade before that.

> All of these 353,000 people were charged with misdemeanors, the lowest level of criminal offense. Even so, nearly everybody was handcuffed, put in the back of a police car or van, and taken to the local police station where they were photographed and fingerprinted by the arresting officer. Most people were then incarcerated overnight in one of the city's large jails.

> ● Marijuana possession arrests in New York City are racially skewed. Blacks were 52% of the arrests, but only about 26% of the city's population. Hispanics were 31% of the arrests, but about 27% of the population. Non-Hispanic Whites were 15% of the arrests, but over 35% of New York's population.

> ● From 1997 to 2006, New York City arrested and jailed approximately 185,000 Blacks, 110,000 Latinos, but only 53,000 Whites for possessing small amounts of marijuana.

78. NYC and its officers, officials, agents, employees, and servants, officers, were deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of Plaintiffs' rights in particular.

79. All Defendants acted under pretense and color of state law and in their official capacities and within the scope of their employment.

80. Said acts by the Defendants were without authority in law, and were in abuse of their powers. Said Defendants acted willfully, knowingly, and with specific intent to deprive Plaintiff of his constitutional rights.

81. As a result of the failure of NYC and its officials to properly recruit, train, discipline and supervise its police officers, including the NYPD Defendants that were present at the 75th Police Precinct, NYC has tacitly authorized, ratified, and been deliberately indifferent to, the acts and conduct complained of herein.

82. As a direct and proximate result of the Defendants' acts described herein, Defendants have caused Plaintiff to suffer deprivation of his liberty, mental and emotional distress, suffering, humiliation, embarrassment, economic, and other damages.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38 Plaintiff demands a trial by jury, on all issues so

triable, in this action.

**WHEREFORE**, Plaintiff, David Trammell, demands judgment and prays for the following relief, jointly and severally, against the individual NYPD Defendants:

(a) Full and fair compensatory and punitive damages in an amount to be determined by a Jury;

(b) Statutory Attorneys Fees pursuant to, *inter alia*, 42 U.S.C. §§1988, the costs and disbursements of this action; and

(c) Such other and further relief as appears just and proper.

And the following relief against the municipal Defendant NYC:

(a) Full and fair compensatory damages in an amount to be determined by a Jury;

(b) Statutory Attorneys Fees pursuant to, *inter alia*, 42 U.S.C. §1988, the costs and disbursements of this action; and

(c) Such other and further relief as appears just and proper.

Dated: January 22, 2013

BY: _____
     Glenn A. Wolther
     *Attorney At Law*
     305 Broadway, Suite 1102
     New York, New York 10007
     Tel: (212) 964-2120
     *Attorney for Plaintiff*-David Trammell